David D. Lin (*pro hac vice* forthcoming)
**LEWIS & LIN LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: David@iLawco.com

*Attorneys for Fornix Holdings LLC
And CP Productions, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| Fornix Holdings LLC; and CP Productions, Inc., | Case No.: |
|---|---|
| Plaintiff, | **VERIFIED COMPLAINT** |
| - versus - | |
| John Doe d/b/a Erome.com, | |
| Defendant. | |

Plaintiffs Fornix Holdings LLC ("Fornix") and CP Productions, Inc. ("CP Productions", together with Fornix as "Plaintiffs") appear before this Court to file this Verified Complaint against John Doe d/b/a Erome.com, whose true identity is unknown ("Erome" or "Defendant"), and allege as follows:

**PRELIMINARY STATEMENT**

1. This is an action by Fornix and CP Productions, two Arizona corporations that own or license registered copyrights in various adult video works, for damages and injunctive relief arising from the massive infringement of Plaintiffs' copyrights by

1

1 Defendant, and the serial piracy of Plaintiffs' content.

2. Fornix is the registered copyright owner of 414 audiovisual works of adult video content with the U.S. Copyright Office (the "Works").

3. Fornix licenses its video content solely to CP Productions for publication on its website located at <Gloryholeswallow.com> (the "GHS Website"), a highly acclaimed membership-based adult website featuring live action photos and videos.

4. Since 2020, Plaintiffs have identified Defendant, who operates an infringing website located at <erome.com> that has been unlawfully hosting, storing, and redistributing copyrighted works of Plaintiffs and third parties (the "Erome Website"). Recently, said infringing content has become persistent and incessant, causing increasing harm to Plaintiffs and necessitating this suit.

5. Erome monetizes its copyright infringement upon Plaintiffs' Works by advertisements and linking to its affiliate subscriber-based websites.

6. Erome intentionally conceals its identity by (i) omitting registrant information on public domain registration records, known as "WHOIS" records, and/or (ii) masking its identifying information on WHOIS records through redactions and privacy emails, making it more difficult for Plaintiffs to identify Defendant and enforce their copyrights.

7. Plaintiffs have spent considerable effort and resources attempting to stop the large scale infringement on Defendant's website. However, continued theft of Plaintiffs' valuable intellectual property with impunity has forced Plaintiffs to initiate this action.

**PARTIES**

8. Plaintiff Fornix is an Arizona corporation that specializes in adult media content management.

9. Plaintiff CP Productions is an Arizona corporation that produces adult entertainment content. CP Productions owns and runs the GHS Website, which it uses to distribute visual and audiovisual works.

10. Fornix owns the copyrights on the video content displayed on the GHS Website, which it licenses to CP Productions.

11. The true identity of Defendant Erome is unknown.

12. According to publicly available domain name registration records, Erome uses Internet Domain Service BS Corp, a Bahamas based registrar, and can be contacted at the email: 45eb757f2776c2a4c177121a5b5a25d1b2e9816bed8888c27e44b5ad528f3e8@erome.com.whoisproxy.org

13. On its website, Erome lists contact@erome.com as its contact information.

**JURISDICTION AND VENUE**

14. This is a civil action for injunctive and legal relief for copyright infringement, 17 U.S.C. § 501 *et seq.*

15. This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement pursuant to 28 U.S.C. §§ 1331, 1338.

16. This Court has personal jurisdiction over Defendant because it has

purposefully targeted the U.S. by creating a website targeting Plaintiffs' U.S. clientele, acquiring hosting services through an American company (Cloudflare.com), voluntarily applying U.S. law on its website, specifically a DMCA notice, and using Google analytics and directing its users to its affiliated Reddit site, both of which are U.S.-based. Additionally, this Court has personal jurisdiction over Defendant because its actions cause foreseeable damage to Plaintiffs within the State of Arizona.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)-(3).

## FACTS COMMON TO ALL CLAIMS

### Plaintiffs' Business and Copyrighted Works

18. CP Productions produces, markets, and distributes adult entertainment visual and audiovisual works.

19. CP Productions owns and runs the GHS Website to distribute its works. Since 2011, CP Productions has operated the GHS Website as the exclusive channel for distributing its full-length videos and photographs.

20. As of today, CP Productions has produced and posted over 1,000 videos on the GHS Website ("Works").

21. In 2018, Fornix was formed to prosecute, manage, and protect the copyrights in the Works.

22. Fornix handles the copyright management and licensing of the Works, including registering copyrights with the United States Copyright Office.

23. As of today, Fornix has registered copyrights for 414 Works ("Works" or

4

"Registered Works"). A full list of the copyright registrations is attached hereto as **Exhibit A**.

24. Fornix will continue to seek copyright protection for works to be produced by CP Productions in the future.

25. Fornix holds all exclusive rights in the Registered Works, and exclusively licenses the Works to CP Productions to display and distribute through the GHS Website.

26. CP Productions uses a pay-to-access model to distribute the Works via the GHS Website.

27. A non-member visitor to the GHS Website may view five free videos per internet protocol address ("IP address"). These free videos are trailer sized and typically less than two minutes long.

28. To access the full-length videos and photographs, which are, on average, more than 40 minutes long, a visitor must create an account with the GHS Website by providing a valid email address, username, and password.

29. When creating an account, a visitor must also pay for a subscription to become a member with full access to the Works. The GHS Website offers three subscription plans: a 3-month membership at $79.95, a 6-month membership at $149.95, and a 12-month membership at $269.95.

30. Membership is issued once the provided credit card information has been verified and cleared by a third-party fraud prevention service.

31. Members have unlimited access to all copyrighted content distributed via the

1  GHS Website, including downloadable videos and photographs.

2        32.    Every full-size video accessed from the GHS Website includes a prominent

3  "warning" announcement at the beginning of the video. The latest version states: "This

4  video contains a unique 'Digital Identification' code. The code can identify the Member

5  who shares it. (See autograph.xvid.com) This video is copyright and trademark registered.

6  **It's illegal to share!** Criminal Copyright Code: 17 U.S.C. 506(a) and 18 U.S.C. 2139(c)

7  bpm" (emphasis in original) and then includes a unique date of registration for each video.

8        33.    Plaintiffs use non-party copyright enforcement agents to monitor for the

9  Works and copyright infringement across the Internet. These agents help detect other

10  websites that host or store the Works without Plaintiffs' authorization.

**Defendant's Infringing Conduct**

12        34.    Erome operates and maintains the Erome website and owns the associated

13  domain name <erome.com> ("Erome Domain Name").

14        35.    VeriSign, Inc. ("VeriSign") is the authoritative registry for all domain names

15  with the top-level domain ("TLDs") ".com", including the Erome Domain Name at issue:

16  <erome.com>. VeriSign controls the infrastructure for these domain names and maintains

17  and propagates the following information for each: (i) the domain name, (ii) the primary

18  and secondary name servers, (iii) the name of the registrar, and (iv) the expiration date of

19  the registration. If needed, VeriSign has the right and ability to revoke access to a ".com"

20  domain name, rendering it "inactive."

21        36.    Upon information and belief, Cloudflare provides content delivery network

6

("CDN"), domain name system ("DNS"), reverse-proxy, security and other services for Erome. Cloudflare also provides globally based CDN services to increase website responsiveness and speed by storing copies, or caches, of a website's content on local servers located across the globe. As a result, when a U.S. visitor accesses the content of Erome, copies or caches of the content are automatically created onto the U.S.-based server(s) where such visitor is located.

37. Erome relies on the infrastructure services provided by VeriSign and Cloudflare to maintain the Erome Domain Name and operate the Erome Website. Without VeriSign's services, Erome would be extremely difficult to locate and would lack the "online presence" a universally recognized top-level domain ending in ".com". Upon information and belief, without Cloudflare's services, Erome would be slower, have higher bandwidth costs, lose security services that protect it from pirates, and lose anonymity afforded by the reverse-proxy service.

38. Erome is a hosting or tube site, allowing individuals to "upload, store, and share" post videos and images, provided it complies with the guidelines set out on Erome's website.

39. Erome also provides features like photo editing and video thumbnail creations. Erome's terms and services specify that a user's uploading of content allows Erome to apply those features on the uploaded content.

40. On the Erome Website, Erome represents in its terms of service that it maintains the right to monitor and screen posted content and to remove any content that it

7

deems not in compliance with its own guidelines or the law. Erome also reserves the right to permanently delete accounts after giving an account holder three warnings.

41. However, even though Erome has been put on actual notice of infringing videos by Plaintiffs, Erome has failed to adequately respond to Plaintiffs' notices. Erome has taken videos down in response to Plaintiffs' notices, but it has failed to respond to all the requests and has forced Erome to repeatedly send requests.

42. Additionally, upon information and belief, Erome has also taken down infringing content on request, and disabled links to said content only to later re-enable the content to make the infringing content viewable again. This forces Plaintiffs to vigilantly monitor the same links to repeatedly check if they have been reenabled, and then once they have, to send takedown notices again.

43. By operating the Erome Website and allowing users to freely upload infringing copies of Plaintiffs' Works for free distribution and downloads, Erome materially contributes to and supports the direct infringing conduct of its users.

44. When videos and photos are uploaded and stored on Erome, Erome makes unauthorized derivative works including thumbnails, and profits from others' unauthorized copying of the Works, while failing to remove the content and or the uploaders.

45. As such, Erome conducts, enables, and encourages unauthorized copying and distribution of Plaintiffs' Works on the Erome Website.

46. Individuals who have posted infringing content have also posted personal private information about models who create content for Plaintiffs. This has included the

personal work information and address and full names of some of the models. This has resulted in one model having to shut down her beauty salon as men began stalking her at her place of business after her personal information was posted on the Erome Website.

47. Erome has allowed these malicious postings to continue even after Plaintiffs have sent countless takedown notices and alerted Defendant as to the issue.

48. Upon information and belief, Erome has been facilitating the distribution of unauthorized copies of Plaintiffs' Works via the Erome Website since at least 2020. In or around mid-2024, the collection of Plaintiffs' Works that were posted for free streaming on the Erome Website grew to a staggering amount, diverting more and more viewers from the GHS Website. Additionally, private information has been posted along with the infringing content, which has compounded the harm suffered by Plaintiffs.

49. Content on the Erome Website, upon information and belief, is constantly deactivated and reactivated to avoid claims of infringement or to purport to be in compliance with takedown notices. This makes it difficult or even impossible to track how many of Plaintiffs' videos are currently or at any given time are displayed on the Erome Website. It also makes it very difficult to track the number of views or the digital view count on any given video.

50. Plaintiffs believe that hundreds, if not thousands, of visitors to the Erome Website have accessed and viewed the unauthorized copies of Plaintiffs' works.

51. Erome is profiting from operating the Erome Website. Erome states that they use third-party advertisers and that it runs Google Analytics on the website. Erome also

monetizes its infringement by providing links on the top of the webpage to other affiliated websites it runs through paid subscription services. Upon information and belief, Erome profits from running this website.

52. Erome does not have a registered agent for the notification of copyright infringements and is not listed in the Copyright Office's comprehensive registry of sites that have appointed registered agents in order to comply with 17 U.S.C. §512(c) as required by the Digital Millennium Copyright Act, 17 U.S.C. § 512, and therefore is ineligible for any safe harbors against liability that law provides. *See* https://dmca.copyright.gov/dmca/search.html.

53. Erome additionally does not have any policy, shared with its users, regarding repeat infringers as required by the DMCA, 17 U.S.C. § 512, and therefore even if it had a registered agent, it would still be ineligible for any safe harbors against liability that law provides.

54. Additionally, Erome has actual knowledge of the infringing activity at issue and/or knowledge of facts and circumstances indicating the infringement at issue, and has failed to act expeditiously to remove such content upon gaining such knowledge making them unable to utilize the safe guards of the DMCA, 17 U.S.C. § 512.

55. Through non-party copyright enforcement agents, Plaintiffs have submitted 2,030 notices to Erome. In response, Erome has occasionally taken down the content, while in other instances has failed to do so leaving the infringing content displayed on their website, and in others they have taken down the content only to re-enable the videos at a

later date. It is difficult to calculate the exact number of infringing videos currently displayed or how many links directing to unauthorized copies of Plaintiffs' Work remain active on the Erome Website because of said taking down and reinstating of videos, but upon information and belief there are well over a hundred. The number of infringing videos is likely to grow as this case proceeds.

56. Upon information and belief, Erome also includes the copyrighted works of other parties without authorization, in violation of the owners' copyrights. Plaintiffs base this belief on their knowledge of the industry and the observation that the other parties' whose work has been pirated on the Erome Website distribute their work through pay-to-watch models and prohibit free downloading or sharing of their content.

**Harm to Plaintiffs**

57. Because Plaintiffs rely on a pay-to-access model to distribute the Works via the GHS Website, the rampant infringement by Defendant through the Erome Website hurts Plaintiffs' ability to profit from their content.

58. Numerous members of the GHS Website have informed Plaintiffs when they have found pirated videos on the Erome Website and have expressed complaints that they have to pay for the Works while others can view them on the Erome Website for free.

59. Some of the models who work for Plaintiffs have alerted and complained to Plaintiffs about the infringing content posted on Defendant's website, as more and more frequently posts on Defendant's website has been including personal information about the models.

60. As of today, the Erome Website remains active.

## COUNT I – COPYRIGHT INFRINGEMENT

## UNDER 17 U.S.C. § 501

61. Plaintiffs repeat and re-allege paragraphs 1-60 as if set forth herein.

62. Fornix is the exclusive owner of all the rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in **Exhibit A**.

63. CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106 (2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

64. Defendant, through the operation of their website, unlawfully creates copies and derivative versions of the Works, either registered or unregistered, stored the unauthorized copies and derivatives through—at a minimum—causing the unauthorized derivatives to be accessed by visitors from the U.S. and copied or cached onto the U.S. visitors' local servers.

65. By storing and displaying Plaintiffs' Works, where third parties could freely access and download the videos for their own use, Defendant distributed the Works without Plaintiffs' authorization.

66. Defendant's unauthorized copying and distribution of the Works violated Plaintiffs' exclusive rights under 17 U.S.C. § 106.

## COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT

67. Plaintiffs repeat and re-allege paragraphs 1 - 60 as if set forth herein.

68. Fornix is the exclusive owner of all rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in **Exhibit A**.

69. CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106 (2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

70. Defendants Erome operates the Erome Website with the power to monitor and remove infringing content. However, upon being informed by Plaintiffs of infringing content Erome has not expeditiously removed all the content. Thus, Defendant has profited from the direct infringement posted on their website and declined to exercise their right to stop or limit it.

71. As such, Defendant is vicariously liable for its users' direct copyright infringement conducted through the Erome Website.

**COUNT II – CONTRIBUTORY COPYRIGHT INFRINGEMENT**

72. Plaintiffs repeat and re-allege paragraphs 1-60 as if set forth herein.

73. Fornix is the exclusive rights owner of all rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in Exhibit A.

74. CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106 (2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

75. Defendant operates a hosting website, allowing users to post infringing content, without adequately providing a policy to prevent such infringement or responding

and taking down infringing videos upon being notified of such infringement. Therefore, Erome materially contributes to others' copyright infringement by facilitating the transmission, display, and storing of infringing copies of Plaintiffs' Works through the Erome Website.

76. Defendant engages, enables, or encourages distribution of infringing content by its users with actual knowledge of others' direct copyright infringement, as Erome has not taken consistent and adequate action to remove infringing copies of Plaintiffs' Works upon Plaintiffs' DMCA notices identifying links to the specific instances of infringement. Thus, Defendant materially contributes to others' copyright infringement by facilitating transmission of infringing copies of Plaintiffs' Works through the Erome Website.

**REQUEST FOR RELIEF**

Plaintiff respectfully request that the Court hereby:

1. Enter a judgment declaring that the Defendant has directly and willfully infringed Plaintiffs' copyrights in the Works distributed through the GHS Website pursuant to 17 U.S.C. § 501;

2. Enter a judgment against the Defendant for Plaintiffs' full actual and/or statutory damages arising from the Defendants' copyright infringement under 17 U.S.C. § 504;

3. Order an accounting and disgorgement of the Defendant's profits, gains and advantages realized from its unlawful conduct under 17 U.S.C. § 504;

4. Enter an order directing the Defendant to pay Plaintiffs the costs, expenses,

and reasonable attorney's fees incurred by them in prosecuting this action pursuant to 17 U.S.C. § 505;

5. Enter a judgment enjoining the Defendant, as well as its officers, agents, servants, employees, and attorneys, including all Internet Service Providers that provide infrastructure to the Infringing Websites (including but not limited to domain name registrars, domain name registries, and website hosts), from future infringement of Plaintiffs' copyrights, including but not limited to requiring them to take all necessary action to:

    a. Deactivate and cancel the Erome Domain Name;

    b. Deactivate the Erome Website and permanently delete all information stored thereon relevant to Plaintiffs' Works;

    c. Permanently delete all copies and information stored on the Erome Website relevant to Plaintiffs' works;

    d. Delete all copies of Plaintiffs' Works that have been uploaded to the Erome Website, its affiliated sites, or any third-party websites;

    e. Cease the provision of all Internet services to the Defendant for the maintenance or operation of the Erome Website websites, including but not limited to domain name registration, hosting, security, content delivery, and reverse proxy services;

6. Enter an order directing that the Erome Domain Name be transferred to an account under Plaintiff's control;

7. Enter a judgment granting Plaintiffs pre-judgment and post-judgment interest

at the applicable rate; and

8. Grant to Plaintiffs any further relief, either in law or equity, to which this Court deems them fit to receive.

DATED: November 26, 2024
Brooklyn, New York

Respectfully submitted,

LEWIS & LIN, LLC

By: */s/ David D. Lin*
　　　David D. Lin, Esq.

(*pro hac vice* forthcoming)

*Attorneys for Fornix Holdings LLC and CP Productions, Inc.*

# VERIFICATION

I, DAVID L. GRAVES, declare:

1. I am the co-owner and director of Plaintiffs Fornix Holdings LLC and CP Productions Inc.. I am an authorized agent of Plaintiffs for the matters concerned in this Verified Complaint.

2. I have read the foregoing Verified Complaint and know the contents thereof. I have personal knowledge of Plaintiffs and their activities, including those set out in the foregoing Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. The factual statements in this Verified Complaint concerning Plaintiffs, their activities, and their claims are true and correct, except as to matters stated therein on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 26, 2024
Scottsdale, Arizona

David L. Graves