David D. Lin (*pro hac vice* forthcoming)
**LEWIS & LIN LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: David@iLawco.com

*Attorneys for Fornix Holdings LLC*
*And CP Productions, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Fornix Holdings LLC; and CP Productions, Inc.,<br><br>        Plaintiffs,<br><br>        - versus -<br><br>John Doe d/b/a Erome.com<br><br>        Defendant. | Case No.: 2:24-cv-03383-KML |

**Memorandum of Points and Authorities in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order, Order to Show Cause for Preliminary Injunction, and Order to Allow Alternative Service**

# Table of Contents

**PRELIMINARY STATEMENT** ..................................................................................................... **5**

**FACTUAL BACKGROUND** ......................................................................................................... **5**

       *I.*   *Plaintiffs' Business and Intellectual Property* ........................................................... 5

       *II.*   *Defendant's Illegal Activities* ..................................................................................... 6

       *III.*  *Harm to Plaintiffs* ..................................................................................................... 7

**ARGUMENT** ............................................................................................................................... **8**

       *I.*   *Plaintiffs Have Met the Legal Standard for a TRO* .................................................. 8

           A.   Plaintiffs Are Likely to Succeed on the Merits ................................................. 9

           B.   Plaintiffs Are Likely to Suffer Irreparable Harm Absent a TRO ....................... 15

           C.   The Balance of Equities Strongly Favors Plaintiffs ........................................... 18

           D.   A TRO is in The Public Interest ......................................................................... 19

           E.   An *Ex Parte* TRO is Appropriate ...................................................................... 19

           F.   Minimal Security Should be Required By Plaintiffs ........................................... 22

       *II.*  *The Court Should Allow Alternative Service for Defendant* ............................ 22

**CONCLUSION** ........................................................................................................................... **24**

# TABLE OF AUTHORITIES

## Cases

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ................................................................ 8

*A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .......................................... 12, 13

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 8

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999) ...................................................... 22

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) ...................... 11

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) .................................. 12

*Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 969 (2016) ..................... 11, 12

*Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ........................... 17, 19

*Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 451 (9th Cir. 2024) ............................. 10

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ............................................................... 14

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011) ...................... 16

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) ....................................... 14

*Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000) .................................................................... 22

*Hydrentra HLP Int. Ltd. v. Sagan Ltd.*, 783 F. App'x 663 (9th Cir. 2019) ................................ 9

*Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-0280-PHX-LOA, 2011 WL 7430062 (D. Ariz. Mar. 3, 2011) ................................................................................................................. 24

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) ................................ 10

*Merch. Transaction Sys., Inc. v. Necela, Inc.*, No. 02-1954-PHX-MHM, 2010 WL 330346 (D. Ariz. Jan. 21, 2010)  8

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........................... 11

*Monge v. Maya Mags., Inc.*, 688 F.3d 1164 (9th Cir. 2012)................................................... 15

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ................................ 13, 14

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ........................................... 11

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) .............................. 19, 20

*Rio Props. V. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ......................................... 23, 24

*Small v. Avanti Health Sys., LLC*, 661 F.3d 1180 (9th Cir. 2011) ........................................... 16

*Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330 (9th Cir. 1995) ................................................ 18

*Trial Film LLC v. Wu Daoai*, No. CV-21-00984-PHX-JJT, 2021 WL 2949508 (D. Ariz. July 14, 2021) .......... 19, 20

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) ............................. 12

*Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022) ............................................................... 9, 10

## Statutes

17 U.S.C. § 106 ........................................................................................... 11, 12

17 U.S.C. § 107 ............................................................................................... 14

17 U.S.C. § 410(c) ....................................................................................... 11, 12

17 U.S.C. § 501(b) ........................................................................................... 12

28 U.S.C. § 1400(a) .......................................................................................... 11

Ariz. R. Civ. P. 4.1(k) ....................................................................................... 22

Fed. R. Civ. P. 4(f) .......................................................................................... 23

Fed. R. Civ. P. 4(k)(2) ........................................................................................ 9

Fed. R. Civ. P. 65(b) ........................................................................................ 19

Fed. R. Civ. P. 65(c) ........................................................................................ 22

# PRELIMINARY STATEMENT

Plaintiffs Fornix Holdings LLC ("Fornix") and CP Productions, Inc. ("CP Productions," collectively with Fornix as "Plaintiffs") are Arizona companies that create and manage adult entertainment content. Defendant John Doe d/b/a erome.com ("Erome") has blatantly perpetuated and supported a scheme of infringement of Plaintiffs' copyrighted visual and audiovisual works. Defendant has purposefully hidden its identity and repeatedly disregarded Plaintiffs' takedown notices. Accordingly, Plaintiffs request a TRO disabling the websites, a show cause hearing why the TRO should not be converted into preliminary injunction, and an order allowing for alternative service.

# FACTUAL BACKGROUND

## I.    Plaintiffs' Business and Intellectual Property

Fornix is an Arizona corporation specializing in media content management and CP Productions is an Arizona Corporation that promotes and distributes adult entertainment content. Compl. ¶¶ 8, 9; Graves Decl. ¶ 2. Since 2011, CP Productions has operated the website <gloryholeswallow.com> ("GHS Website") to distribute its works. Compl.¶ 9; Graves Decl. ¶ 5. The GHS Website is the exclusive channel through which CP Productions distributes its full-length videos. Fornix prosecutes, manages, and protects the copyrights for the works CP Production creates and distributes. As of today, Fornix has registered copyrights for 414 of the Works.  Fornix exclusively licenses the Works to CP Productions to use and distribute via the GHS Website. Compl. ¶ 19; Graves Decl. ¶ 5.

To access Plaintiffs' full-length video content on the GHS Website, a viewer must

create an account and pay for a subscription to become a member. Compl. ¶ 26. Only those

individuals with paid memberships can access unlimited full-length, high-resolution videos

and the full collections of photographs on the GHS Website. Compl. ¶ 28. Moreover,

Plaintiffs prohibit unauthorized redistribution of their content and include a "warning"

announcement stating as much and displaying copyright information at the beginning of

every video. Compl. ¶ 32. Additionally, Plaintiffs use non-party copyright enforcement

agents to monitor the internet for all unauthorized and infringing distribution and display

of the Works in violation of copyright law. Compl. ¶ 33; Graves Decl. ¶ 11.

## II.    Defendant's Illegal Activities

Defendant operates a tube site which allows individuals to upload, store, and share

videos and photos on the website and with other users. Every upload authorizes Defendant

to host and display the video and to apply the tools available on its website, such as creating

video thumbnails, editing, and sharing. Many individuals have posted Plaintiffs'

copyrighted works on Defendant's website, which has led Defendant to subsequently

create thumbnails, store, and share said infringing content. Defendant states on its website

that it reserves the right to remove infringing content posted thereon, yet despite repeated

notifications from Plaintiffs, Defendant has not removed all infringing content and has not

taken sufficient steps to prevent the continued posting and sharing of said infringing

content.

The top-level domain registry, VeriSign, controls all ".com" domain names,

including the <erome.com> domain used for Defendant's website. Compl. ¶ 35. Verisign

is responsible for maintaining and propagating the following information for these domains: (i) the domain name; (ii) zone files that contain the IP addresses of the primary and secondary name server for that domain name, (iii) the name of the registrar for the domain name, and (iv) domain owner or registrant information. Lin Decl. ¶ 6. If needed, VeriSign has the right and ability to put a domain name on "ServerHold" or "Server TransferProhibited" status and revoke access to a ".com", rendering it inactive. *Id.* The Erome Website uses the services of Cloudflare, Inc. ("Cloudflare"), which provides content delivery network ("CDN"), reverse-proxy, security, and other services. Compl. ¶ 36. If needed, Cloudflare has the right and ability to cease its services to the Erome Website.

Since at least 2020, Defendant has been allowing unauthorized copies of plaintiffs' works to be stored, copied, and displayed on its website. Although Plaintiffs have repeatedly sent takedown notices to Defendant, Defendant has only sporadically complied, leaving infringing content displayed and stored on its website. Compl. ¶¶ 41-42; Graves Decl. ¶¶ 17-18. Additionally, Defendant has not been effectively acting to prevent and remove personal private information posted on its website about Plaintiffs' models, resulting in their harassment. Moreover, Plaintiffs do not know Defendant's true identity. Erome masks the registration information for its domain name <erome.com> with privacy services. Compl. ¶ 6; Lin Decl. ¶ 5.

### III.    Harm to Plaintiffs

Defendant's conduct has caused great financial loss and impairment to Plaintiffs' good will. Members of the GHS Website have complained to Plaintiffs about the free,

pirated videos they find on the Erome Website. Compl. ¶ 58; Graves Decl. ¶ 25. Additionally, Plaintiffs' models have had their personal information posted with the infringing videos and has led to at least one model being stalked at her place of business. Recently, Defendant's posting of infringing content has become more persistent and incessant, with Defendant posting Plaintiffs' content for free at a staggering rate, causing increasing harm to Plaintiffs. Compl. ¶ 48. Although Plaintiffs have expended much effort and resources attempting to stop this piracy, the theft continued, forcing Plaintiffs to take immediate action to enjoin Defendant from further damaging their business and to better protect their copyrights. Compl. ¶¶ 7, 55.

# ARGUMENT

## I. Plaintiffs Have Met the Legal Standard for a TRO

The substantive standard for a TRO and a preliminary injunction are identical. *Merch. Transaction Sys., Inc. v. Necela, Inc.*, No. 02-1954-PHX-MHM, 2010 WL 330346, at *3 (D. Ariz. Jan. 21, 2010). To obtain either, a plaintiff must show that "(1) [it] is likely to succeed on the merits, (2) [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotes and citations omitted). The Ninth Circuit uses a "sliding scale" test, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). As detailed below, Plaintiffs meet this burden.

### A. Plaintiffs Are Likely to Succeed on the Merits

As to preliminary matters, the Court has specific personal jurisdiction over Defendant because it has purposefully targeted the U.S. by creating a website aimed at a U.S. clientele through efforts such as acquiring hosting services through an American company (Cloudflare.com), voluntarily applying U.S. law on its website, specifically a DMCA notice, and using Google analytics and directing its users to its affiliated Reddit site, both of which are U.S.-based. Additionally, this Court has personal jurisdiction over Defendant because its actions cause foreseeable damages to Plaintiffs within the U.S.

Under Fed. R. Civ. P. 4(k)(2), for a claim arising under Federal Law, personal jurisdiction may be established over a defendant in any U.S. Court when the defendant is not subject to jurisdiction in any state court of general jurisdiction and exercising "jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *see Will Co. v. Lee*, 47 F.4th 917, 927 (9th Cir. 2022). The due process analysis under this rule is nearly identical to the traditional personal jurisdiction analysis except that courts consider contacts with the nation as a whole, rather than the forum state. *Hydrentra HLP Int. Ltd. v. Sagan Ltd.*, 783 F. App'x 663, 665 (9th Cir. 2019). The Ninth Circuit conducts this due process analysis under a three-prong test: (1) the party must purposefully direct her activities toward the United States or "purposefully availed itself of the privilege of conducting business in the United States"; (2) the claim must arise out of or relate to the party's forum related activities; (3) the exercise of jurisdiction must comport with fair play and substantial justice. *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 451 (9th Cir.

2024)(internal citation omitted). In copyright infringement cases, personal jurisdiction can be established by "purposeful direction" by a defendant, where the defendant has (1) committed an intentional act, (2) expressly aimed at the forum state or the U.S., and (3) causing harm that the defendant knows is likely to be suffered in the forum state or the U.S.. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011). A website that hosts third-party content on its site has met this standard, and can be said to anticipate the harm, in a copyright infringement case when the operators of a tube website actively seek or appeal to a U.S. audience and are put on notice that there is infringing content displayed on its website. *Will Co. v. Lee*, 47 F.4th 917, 927 (9th Cir. 2022).

Here, Defendant has sufficient contacts with the United States to give rise to specific jurisdiction over Plaintiffs' copyright infringement claim. Defendant committed an intentional act by operating its website. Defendant seeks out a U.S. audience by utilizing hosting services through an American Company, Cloudflare, which ensures that its clients in the U.S. have quicker speed times. Compl. ¶¶ 16, 37. Defendant further voluntarily lists U.S. law on their website, and uses other U.S. based companies to provide services associated with the site, including Google analytics and Reddit. Compl. ¶ 16. While seeking out a U.S. audience, Defendant has been put on notice that infringing content of the Plaintiffs' was being stored and displayed on its website. Compl. ¶ 41. By attracting visitors with its infringing content, Defendant profits from this infringement through links to its subscription based affiliated websites and third-party advertisements. Compl. ¶ 51; Graves Decl. ¶ 22.  It was foreseeable that Plaintiffs, as U.S. based companies, with clients

predominantly in the U.S., would be harmed by Defendant's conduct, including harm to their business and profits occurring in Arizona, and throughout the U.S.

Venue is also proper. In copyright infringement actions, venue is proper "in the district in which the defendant … resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit interprets this provision to allow venue in any judicial district where the defendant would be subject to personal jurisdiction. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010). Since Defendant is subject to specific personal jurisdiction here, this district is also a proper venue.

As to the substantive issues, a plaintiff must satisfy two requirements to present a prima facie case of direct copyright infringement: (1) that the plaintiff owns the allegedly infringing materials, and (2) that the alleged infringers violate at least one exclusive right of the plaintiff's under 17 U.S.C. § 106. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 969 (2016).  And to establish vicarious infringement the plaintiff must prove that the defendant (1) directly profits from direct infringement, (2) "while declining to exercise the right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005)*; Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 673 (9th Cir. 2017). Lastly, to establish a case for contributory infringement the plaintiff must prove (1) direct infringement and (2) the defendant's intentional inducement or encouragement of said direct infringement. *Id*.

Here, the Plaintiffs' copyright registrations establish prima facie evidence of Fornix's ownership of valid copyrights for the Registered Works. 17 U.S.C. § 410(c);

1  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011)

2  ; *see also* Compl. ¶ 62. Fornix holds all exclusive rights in the Registered Works

3  under 17 U.S.C § 106. Compl. ¶¶ 62-63. As the exclusive licensee to distribute and display

4  the Registered Works via the GHS Website, CP Productions can also bring suit to enforce

5  those rights. *See* 17 U.S.C. § 501(b).

6  By making derivatives and displaying and distributing those Works without

7  authorization, Defendant infringes Plaintiffs' exclusive rights under 17 U.S.C. § 106 (1)-

8  (5). *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (finding

9  violation of the plaintiff's distribution right where the defendant made files searchable and

10  copiable for others to download through a peer-to-peer file-sharing service); *see also*

11  *Disney*, 224 F. Supp. 3d at 969 (finding violation of the plaintiff's reproduction and public

12  performance rights where the defendant made digital copies of the plaintiff's work and

13  offered it for free streaming on the defendant's website).

14  Defendant's conduct also constitutes secondary infringement. As stated, the

15  copyright registrations establish prima facie evidence of Fornix's ownership of valid

16  copyrights on the Registered Works. 17 U.S.C. § 410(c). And it is irrefutable that

17  individuals created unauthorized copies of Plaintiffs' Registered Works and utilizing

18  Defendant's website, posted and shared them in violation of  17 U.S.C. § 106 (1)-(5). These

19  actions establish direct infringement. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d

20  1020, 1034 (9th Cir. 2013)("downloading copyrighted material" constitutes infringement

21  because it "violates the copyright holder's ... right to reproduction.") In operating the

Erome Website, Defendant expressly maintained the power to monitor and remove infringing content. Compl. ¶ 40. However, upon being informed by Plaintiffs of infringing content, Defendant has failed to effectively exercise its power to stop or limit the infringement. Compl. ¶ 41. Defendant directly profits from this infringement as it induces people to visit its website and thus allows and enables Defendant to profit. This conduct establishes its vicarious liability. *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1024 (9th Cir. 2001)("plaintiffs have demonstrated a likelihood of success on the merits of the vicarious copyright infringement claim. Napster's failure to police the system's "premises," combined with a showing that Napster financially benefits from the continuing availability of infringing files on its system, leads to the imposition of vicarious liability"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007)("vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities").

Additionally, Defendant's conduct constitutes contributory infringement. As discussed above, direct infringement is irrefutable. And Defendant through its website engages, enables, or encourages distribution of infringing content by its users with actual knowledge of others' direct copyright infringement, without acting adequately to take down such conduct or provide for policies to prevent or discourage such conduct by its users. Compl. ¶ 43. This conduct constitutes contributory infringement. *See Perfect10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir. 2007)(contributory infringement can be evidenced by a website that "assists a worldwide audience of users to access infringing materials"); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)("if a

computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement."); *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)("a reasonable trier of fact could conclude that AOL materially contributed to the copyright infringement by storing infringing copies of Ellison's works on its USENET groups and providing the groups' users with access to those copies"); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)( "providing the site and facilities for known infringing activity is sufficient to establish contributory liability").

Furthermore, Defendant's conduct is unjustifiable by any anticipated defenses to a copyright infringement claim. Defendant's website displays identical copies of hundreds of Plaintiffs' Works, which even include Plaintiffs' warning message, which excludes the possibility that Defendant or others created these videos independently. *See* Compl. ¶ 43; Graves Decl. ¶ 15. Nor is Defendant's conduct protected by fair use. The "fair use" doctrine permits the use of copyrighted materials without the owner's authorization under certain situations. It requires balancing four factors: (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The more "transformative" the use is, meaning the defendant uses plaintiff's copyrighted work in a different context or alters it "with new expression, meaning, or message," the more likely such use is fair use. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (internal

citations omitted). However, a transformative use can be outweighed by the fact that the defendant's use is commercial in nature, that the defendant uses a large and substantial portion of the plaintiff's work, or that the defendant's use undermines plaintiff's work's market value. *See, e.g., Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1187 (9th Cir. 2012).

Here, all four factors weigh against a finding of fair use. *First*, Defendant's display and hosting of the Works is not a transformative use. Defendant does not affix "new expression, meaning, or message" to these videos, but rather displays exact copies. *See* Graves Decl. ¶ 15 (stating that Defendant copied Plaintiffs' Works in full). Defendant does this to divert users from the original source to its website for its own commercial gain or increase in viewership. Compl. ¶¶ 57, 51; Graves Decl. ¶ 16. *Second*, the Works are entertainment videos which are creative in nature and closer to the core of intended copyright protection as opposed to fact-based works. *Third*, the fact that the whole videos have been taken, and not simply small elements to use in a different work, shows the lack of transformation and the intention to steal the whole work as is, and thus weighs against Defendant. Compl. ¶ 43; Graves Decl. ¶ 15. *Fourth*, Defendant's unauthorized displaying, storing, and distribution of the videos seriously undermines Plaintiffs' business in a niche content market, and they have suffered great and ongoing financial and reputational loss as a result. Graves Decl. ¶¶ 16, 26.

### B.  Plaintiffs Are Likely to Suffer Irreparable Harm Absent a TRO

The Ninth Circuit rejects the presumption of irreparable harm in copyright cases and requires a showing of a likelihood of irreparable harm. *See, e.g., Flexible Lifeline Sys., Inc.*

*v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011). However, to prevail, a plaintiff "need not prove that irreparable harm is certain or even nearly certain." *See Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011).

Here, Plaintiffs are likely to suffer immediate and irreparable harm if Defendant continues its infringing conduct. First, Defendant's website, despite repeated notices, continues to display Plaintiffs' Works and private information about their models. Thus, as time progresses, the continued postings that are yet to be taken down harm Plaintiffs on a larger scale, as more viewers stray to the free Erome website to view Plaintiffs' content, instead of continuing or starting a paid subscription with Plaintiffs. Second, the continued display and sharing of Plaintiffs' works undermines Plaintiffs' ability to control the exclusive use of its copyrighted Works. Graves Decl. ¶ 27. Third, Defendant's website damages Plaintiffs' standing and success they have worked to establish in a niche market. The offering of Plaintiffs' content for free causes viewers and subscribers to divert from Plaintiffs' website and services in favor of Defendant's free alternative. Furthermore, the harm and loss Plaintiffs incur is incalculable as it is impossible to quantify how many viewers see, download, and further share the infringing videos. And as the infringing conduct is allowed to continue, the harm will only grow and continue to remain unquantifiable. Finally, the ability to view Plaintiffs' content for free, while Plaintiffs continue to charge for it, poses a threat to Plaintiffs' reputation in this niche market as a premier producer and distributor of adult video content, causing irreparable damage to their reputation and goodwill. Graves Decl. ¶¶ 26, 31; *see also Disney Enterprises, Inc. v.*

1    *VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (finding that the defendant's provision

2    of free streams of the plaintiff's copyrighted works undermined the value of the works and

3    damaged the plaintiff's goodwill).

4          Plaintiffs are also likely to suffer irreparable harm without a TRO because

5    Defendant is likely to escape liability for its actions by concealing funds or transferring

6    domain names to continue its infringing conduct, while said conduct is causing ongoing

7    harm to Plaintiffs' business and reputation. Graves Decl. ¶¶ 31-32. Plaintiffs are forced to

8    file this lawsuit as a last resort—as Defendant continues to harm Plaintiffs by ignoring

9    many takedown notices from Plaintiffs, and persisting to allow individuals to use its

10   website to post infringing content and personal and private information about Plaintiffs'

11   models. Graves Decl. ¶ 33. Defendant's lack of consistent and adequate communications

12   also indicates a strong likelihood that Defendant will not comply with any further demands

13   or court orders. *See* Graves Decl. ¶¶ 34-36. Furthermore, Defendant artfully masks its true

14   identity by using privacy services to register the domain name of its website. Lin Decl. ¶

15   5. Defendant operates its website anonymously, which makes it easier for it to quickly

16   transfer its website and the underlying domain name to other host servers and registrars,

17   making it next to impossible to subsequently find it. *See* Graves Decl. ¶ 34. Plaintiffs will

18   continuously suffer from such harm if Defendant is able to use its website or substitutes to

19   persist infringing. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d at 866 (finding

20   that plaintiff sufficiently established a likelihood of irreparable harm where the infringing

21   website undermined its leverage to negotiate exclusive video-streaming licenses, and that

22    

the plaintiff's delay in seeking an injunction was reasonable where the harms caused by the defendant was ongoing and likely to increase absent an injunction).

### C.  The Balance of Equities Strongly Favors Plaintiffs

The balance of equities tips in Plaintiffs' favor because Defendant has no cognizable interest in its repetitive and continued support of and participation in copyright infringement. Defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). Furthermore, Defendant's participation in copyright infringement is not an isolated event. Defendant has been allowing infringing activity to persist on its website, and while taking some infringing content down, has failed to take action or institute adequate policies to prevent the continued and apparently unabated infringement to continue. Compl. ¶¶ 41-43. Though Plaintiffs acknowledge that the Defendant's website contains other videos as well, they believe that many of those videos are also copied without authorization from non-parties that also utilize pay-to-view models to view their copyrighted content. Upon Plaintiffs' knowledge and observations in the adult content industry, many copyright owners explicitly prohibit unauthorized copying, republishing, or distributing of their works for commercial use. Graves Decl. ¶ 37. Because the Defendant profits from third party advertisements and selling subscriptions to its linked affiliate websites, any use of copyrighted materials, including Plaintiffs' works, is presumed to be unauthorized by the respective copyright owners. Graves Decl. ¶ 22. Thus, infringing content on Defendant's website is clearly a persistent and wide-spread problem.

*See Trial Film LLC v. Wu Daoai*, No. CV-21-00984-PHX-JJT, 2021 WL 2949508, at *2 (D. Ariz. July 14, 2021) (temporarily restraining the defendant's entire infringing websites, which contained more than plaintiff's copyrighted videos, as the most narrowly tailored way to halt the plaintiff's irreparable harm).

### D.  A TRO is in The Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Disney*, 869 F.3d at 978 (internal citations omitted). The public interest is well served here by protecting creative works and enjoining Defendant from continued copyright infringement and support of infringement. *See, e.g.*, *Trial Film*, 2021 WL 2949508, at *2.

### E.  An *Ex Parte* TRO is Appropriate

Pursuant to Fed. R. Civ. P. 65(b), the court may issue a TRO without notice to the adverse party when the moving party clearly shows (a) immediate and irreparable harm to it before the adverse party can be heard in opposition, and (b) efforts to give notice and reasons why notice should not be required. Although the "[c]ircumstances justifying the issuance of an *ex parte* order are extremely limited," they may be appropriate "where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (internal quotes and citations omitted). An *ex parte* order may also be proper where notice "would render

fruitless the further prosecution of the action," such as by allowing the defendant to dispose of evidence. *Id.*

Defendant presents many evasive traits that raise the concern that if it had notice, Defendant may cause further damage to Plaintiffs' business by quickly transferring its website, along with the infringing materials, to another domain name or hosting website, thereby mooting Plaintiffs' request. First, Defendant operates its website anonymously and intentionally conceals its identifying information. Defendant's identifying information is redacted or masked in WHOIS Data, leaving only several auto-generated or anonymous email addresses available for contact. Compl. ¶¶ 11, 12; Lin Decl. ¶ 5. *Second*, Defendant uses Cloudflare's reverse-proxy service to mask its true IP address. Compl. ¶ 36; Lin Decl. ¶ 7. *Finally*, given the anonymity of Defendant's operation of its website and the technical ease of transferring websites or domain names, Defendant is likely to deactivate and transfer its infringing website to another domain name or web host upon notice of this lawsuit to evade legal liability. *See* Graves Decl. ¶ 34; *see also Trial Film*, 2021 WL 2949508, at *3 (finding that overseas defendants who operated anonymously and communicated solely through emails would likely destroy, move, hide, or otherwise make inaccessible the proceeds of their infringing materials if given notice).

Moreover, Plaintiffs will suffer irreparable harm if this Court does not issue a TRO directing non-parties to temporarily suspend services to the Defendant's domain name and website. Specifically, Plaintiffs request a TRO directing VeriSign to put the Defendant's domain name on "serverHold" or "server TransferProhibited" status—temporarily

rendering the website inoperable and nontransferable—for the pendency of this lawsuit. Plaintiffs further request a TRO directing Cloudflare to cease its services, including CDN, reverse-proxy, and security services for the Defendant's website. If Defendant ignores this Court's order and persists in its infringing conduct by transferring its domain name and/or website, Plaintiffs would be required to file amended pleadings or additional lawsuits and keep chasing it. Therefore, the issuance of such a TRO will put a stop to the chase and permit Plaintiffs the opportunity to enforce their copyrights without filing successive lawsuits.

Therefore, Plaintiffs urge the Court to issue an *ex parte* TRO enjoining Defendant from: (1) operating or providing any services for its website; (2) transferring its website or the underlying domain name to other hosting services or registrars; and (3) copying, displaying, distributing, or making Plaintiffs' Works otherwise available to third parties without Plaintiffs' authorization. Plaintiffs further request the Court to direct VeriSign and Cloudflare, non-parties, to the terms further set forth in the Proposed TRO filed herewith. This TRO would prevent Defendant from frustrating the purposes of this lawsuit, and Plaintiffs would be protected against further and ongoing irreparable harm. Such order would then give Defendant notice and an opportunity to quickly correct any potentially erroneous ruling—in the unlikely event Defendant elects to appear and contest Plaintiffs' claim.

### F.  Minimal Security Should be Required By Plaintiffs

Fed. R. Civ. P. 65(c) requires plaintiffs to give "security in the amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." District courts have the discretion to set the bond amount or waive the requirement altogether if there is no realistic likelihood of harm to the defendant. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). The circumstances in this case justify a waiver. As stated above, Plaintiffs are likely to prevail, and Defendant cannot claim harm for loss based on continued and ongoing participation in and support of copyright infringement. There is nothing close to legitimate about Defendant's conduct and Plaintiffs respectfully request the Court waive the security. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000). In the alternative, minimal security of $100 is appropriate.

## II.    The Court Should Allow Alternative Service for Defendant

Plaintiffs also ask this Court for leave to effect service of the Summons and Complaint by alternative means upon Defendant. Specifically, for Plaintiffs' counsel to serve Defendant via the email: b1f942541ed345c0f8d445fd93a045960348623837f49b2a8c3868e69838c6@erome.com. whoisproxy.org. If Defendant is a United States resident, Ariz. R. Civ. P. 4.1(k) authorizes this Court to order alternative service upon the plaintiff's showing that traditional means of service are impracticable. Ariz. R. Civ. P. 4.1(k)(1); *see also BMO Harris Bank, N.A. v. Guthmiller*, No. CV-14-00275-PHX-JAT, 2014 WL 2600362, at *1 (D. Ariz. June 10,

2014)(granting alternative service at Defendant's email address). As elaborated above, Plaintiffs cannot obtain any ascertainable information to reveal Defendant's residency or place of business. Plaintiffs can only rely on the listed email address to effectuate service without discovery to reveal Defendant's identity. Thus, Plaintiffs are forced to seek this Court's permission for alternative service since no traditional means of service are available to Plaintiffs.

On the other hand, Fed. R. Civ. P. 4(f) permits alternative service methods for a foreign defendant. Under Rule 4(f), service may be effected upon individuals in foreign countries by any of three mechanisms: (1) "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention..."; (2) "by a method that is reasonably calculated to give notice," for example, "as the foreign authority directs in response to a letter rogatory or letter of request"; and (3) *by other means not prohibited by international agreement, as the court orders.*" Fed. R. Civ. P. 4(f)(1)– (3) (emphasis added). To obtain the Court's permission to utilize Rule 4(f)(3), plaintiffs must show that "the facts and circumstances of the present case necessitate . . . district court intervention." *Rio Props. V. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (internal citations omitted). The Ninth Circuit has held that alternative service under Rule 4(f)(3) does not require attempted service by other methods before resorting to court-ordered service under this rule. *Id.* at 1015–16. Such alternative service, to comply with constitutional notions of due process, should be reasonably calculated to give the defendant notice and an opportunity to be heard. *Id.* at 1016. Due process requires

that service must be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-0280-PHX-LOA, 2011 WL 7430062, at *1 (D. Ariz. Mar. 3, 2011) (permitting service by e-mail under due process) (quoting *Rio Props.*, 284 F.3d at 1016, 1017).

In the instant case, service via email, which Defendant has used to register its domain name, is reasonably calculated to apprise Defendant of this action and application. Defendant acquired and accessed its domain name electronically and to do so must have provided at least one valid email address as means of contact, and under applicable rules Defendant is required to provide accurate registrant information for its domain name and promptly update such information to reflect any changes in such information. *See* Lin Decl. ¶ 9. In the instant case, such information is withheld for privacy, and the WHOIS records of the domain name provides email addresses or contact forms generated by the respective registrar as Defendant's contact email. Lin Decl. ¶ 5. Under these circumstances, there are no other viable means to serve Defendant, because Plaintiffs could not obtain any contact information, beyond the private email displayed, without discovery. Thus, it is fair to serve Defendant in this manner.

## CONCLUSION

Plaintiffs respectfully request an Order: (1) directing Defendant to (a) deactivate and prevent the transfer of its domain name; (b) deactivate and permanently delete its website; (c) delete all copies of Plaintiffs' copyrighted works, which have been uploaded

24

to its website, any of its affiliated websites, or any third-party websites associated with Defendant; and (d) cease providing all services for its website; (2) directing VeriSign to put Defendant's domain name on "ServerHold" or "Server TransferProhibited" status for the pendency of this lawsuit; (3) directing Cloudflare to terminate services to Defendant for the pendency of this lawsuit; (4) setting a show cause hearing why the TRO should not become a preliminary injunction; and (5) allowing alternative service upon Defendant.

DATED: December 2, 2024
         Brooklyn,  New York

Respectfully submitted,

**LEWIS & LIN LLC**

 */s/ David D. Lin*
 David D. Lin, Esq.
(*Pro hac vice* forthcoming)
77 Sands Street, 6th Floor
Brooklyn, NY 11201
David@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Plaintiffs Fornix Holdings LLC and CP Productions, Inc.*